THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* RITSO DAVIS, Respondent.

Second Department, April 22, 1974.

*Eugene Gold, District Attorney* (*Steven W. Fisher* of counsel), for appellant.

*William E. Hellerstein* and *William J. Gallagher* (*Robert B. Sherman* of counsel), for respondent.

COHALAN, J. The Trial Term entered an order granting the motion of defendant, Davis, to suppress certain contraband from being received in evidence and the People appeal.

The order should be reversed, on the law, and the motion to suppress denied.

The undisputed facts reveal that on August 25, 1972 at about 6:30 P.M. a uniformed New York City Housing Department policeman (Hackett) was conversing with a uniformed fellow officer in front of their office in Brooklyn. The neighborhood was considered a high crime area.

An unrelated arrest had just been made and a small crowd had gathered near the police office. Hackett observed Davis standing in the street about 10 feet from him. He knew him by name; and, on the basis of statements made to him by neighborhood residents and police officers, he believed him to be a dealer in dangerous drugs. Hackett noticed that Davis was holding in his hand a woman's polka dot purse with a zipper top. While under observation, Davis unzipped the purse halfway and withdrew matches. The police officer and his colleague moved nearer to Davis. As they closed the gap between them Hackett saw what he took to be glassine envelopes inside the opened purse.

Hackett's training had included a brief course in the department regarding the recognition and packaging of heroin. In service he had made between 5 and 10 arrests involving heroin and had assisted in some 25 others. In most of these cases the heroin had been packaged in small glassine envelopes.

Davis suddenly passed the purse to a woman standing nearby who accepted it without comment. Hackett had kept the purse itself under continuous observation. He and his colleague now moved in, seized the purse and put both the woman and Davis under arrest. The contents of the purse were revealed to be, *inter alia,* 18 glassine envelopes. In passing, it should be noted that no charges were preferred against the woman, due to insufficient evidence.

At the suppression hearing — under cross-examination — a question was put to Hackett: "Q Could you tell whether this was a candy wrapper?", to which he answered: "A It appeared to be a glassine envelope," and shortly after, other questions on the subject were propounded by the cross-examiner and answered as follows:

"Q But there's no way that you or — you couldn't see whether or not it was a glassine envelope or a candy wrapper, could you?

"A I couldn't distinguish the two at that time, but it appeared to me to be glassine envelopes or the wrapper of a Hershey bar.

" Q In other words, you suspected this was a glassine envelope? "

" A Yes."

Of interest at this point as analogous to Hackett's alternative of glassine envelopes or a candy wrapper is the statement in *People* v. *Butterly* (25 N Y 2d 159, 162–163), a case involving the issue as to whether certain police actions constituted routine surveillance or an illegal arrest: " Assuming that the officers did not initiate their conduct with an illegal arrest, there would be probable cause for the later seizure and arrest. *Although Detective La Briola admitted he could not distinguish barbiturates from vitamin pills, he believed the capsules placed on the floor by defendant to be barbiturates. This was not unreasonable.* The defendant, his attention first being drawn to the police officer knocking on the window to his right, was then observed placing the three capsules on the floor with his left hand. Such conduct under such circumstances could be significant evidence of consciousness of guilt. La Briola was, therefore, entitled to infer that contraband was being placed on the floor (compare, e. g., *People* v. *White,* 16 N Y 2d 270, cert. den. 386 U. S. 1008, with *People* v. *Brown,* 24 N Y 2d 421) " (emphasis supplied).

As to initial inability to identify items as illicit drugs, see, also, *United States* v. *Robinson* (414 U. S. 218).

In making its required findings of fact and law, the Trial Term found the testimony of Hackett to be completely credible. At first the motion to suppress was denied on the theory that probable cause had been established.

By the following day, however, the court had second thoughts and vacated its decision. In doing so, it requested the People to submit a memorandum in an attempt to distinguish the instant case and its facts from those of *People* v. *Corrado* (22 N Y 2d 308).

Then, on a subsequent date, after taking further testimony and hearing arguments of counsel, the court ruled: " On the principle of People against Corrado in 22 N. Y., The Court must find that officer Hackett did not have reasonable cause and probable cause to make a search and to arrest the defendant. The motion to suppress the evidence is granted." At the same time the court urged the District Attorney to take an appeal from its decision, in the thought that there was a principle of law involved which might affect other decisions.

Thus, the sole question at issue is whether the police officer had " reasonable cause " to believe the defendant had committed

a crime in his presence, namely, the possession of dangerous drugs.

"Reasonable cause" has been equated with "probable cause" as the latter term is used in the Fourth Amendment to the United States Constitution (*People* v. *Lombardi*, 18 A D 2d 177, affd. 13 N Y 2d 1014).

In *Corrado* (*supra*), the police acted on a tip that a quantity of marijuana would change hands at a certain street corner between designated hours. They set up a stakeout and within the specified times a car pulled up. Three youths were in it. One got out, walked back to another car, momentarily bent down out of view of the watchers and then returned. He handed over four manila envelopes to his two companions, talked with them for a short while and then walked away. As the first car started to drive off, the police moved in and arrested the two young men. Upon inspection the manila envelopes were discovered to contain marijuana.

As justification to support "probable cause", one of the detectives testified that in his broad experience he had never seen loose marijuana in small quantities passed or sold other than in envelopes such as those involved.

The Court of Appeals, by a bare majority vote, reversed and suppressed the seized material, stating (22 N Y 2d 308, 313): "The argument is defective because the envelopes could have contained any number of noncontraband items. This is in sharp contrast to the translucent glassine envelope which has come to be accepted as the telltale sign of heroin. Still, even in the case of the glassine envelope it has never been held that the mere passing of such an envelope establishes probable cause. We conclude, therefore, that the testimony concerning the use of these common envelopes for marijuana does not raise the level of inference from suspicion to probable cause." At the same time the Court of Appeals intimated that, if the young men had made an attempt to flee when the officers identified themselves, the result might have been different.

The intimation brings us to *People* v. *Santiago* (28 N Y 2d 753). There, as a police officer testified at a suppression hearing, he observed Santiago and another man exit from a building. They "looked suspicious" so he "just looked at them" (*id.*, p. 754). They were only about five feet from and were facing the officer. The companion handed some glassine envelopes to Santiago. They were of the same type as envelopes containing heroin the officer had taken from another person the day before. The officer approached Santiago and identified himself. The

defendant bolted, all the while holding onto the envelope. When caught he handed to the officer a paper bag containing hypodermic needles, among other items.

The motion to suppress was denied. In due course, when the case reached the Court of Appeals, the defense argued that, since the officer had observed only the transfer of glassine envelopes, he had acted without probable cause. This argument was met by the People with the counterstatement that the passing of the envelopes, combined with flight, constituted probable cause. The Court of Appeals affirmed, without opinion.

By way of establishing a working criterion, the highest court in the land, in *Brinegar* v. *United States* (338 U. S. 160, 175–176, rehearing den. 338 U. S. 839), noted: " ' The substance of all the definitions ' of probable cause ' is a reasonable ground for belief of guilt.' * * * And this ' means less than evidence which would justify condemnation ' or conviction * * * : Probable cause exists where ' the facts and circumstances within their [the officers '] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that ' an offense has been or is being committed.''

While any one of the factual circumstances in the case at bar, standing alone, would have been insufficient to justify an arrest, when taken together, we have: (1) a neighborhood with a high incidence of crime, with drug traffic a major factor; (2) the defendant's local reputation as a dealer in dangerous drugs; (3) the " somewhat unusual " possession by a man of a woman's purse (see *People* v. *Lakin,* 21 A D 2d 902, 903, where the comment was made by the majority in a case wherein the results of an arrest were suppressed); (4) an experienced police officer's observation of glassine envelopes of the type commonly used in the drug traffic (*People* v. *Santiago,* 28 N Y 2d 753, *supra*); (5) the same officer's belief that the envelopes contained dangerous drugs (*People* v. *Butterly,* 25 N Y 2d 159, *supra*); and (6) the rapid transfer of the purse to a woman nearby upon the approach of the uniformed officers.

The totality of these factors, therefore, adds up to sufficient justification for police officer Hackett's actions and thus warrants a reversal of the order under review, on the law, and a denial of the motion to suppress the evidence in question.

HOPKINS, Acting P. J., MARTUSCELLO, LATHAM and BENJAMIN, JJ., concur.

Order reversed, on the law, and motion denied.